## POSEY v. LIST & WEATHERLY CONST.

### CO. et al.*
### No. 4833.

Court of Appeal of Louisiana. Second Circuit.
June 29, 1934.

William O. Boone, of Shreveport, for appellant.

Foster, Hall, Barret & Smith, of Shreveport, for appellees.

TALIAFERRO, Judge.

Plaintiff sues his employer, List & Weatherly Construction Company, and its insurer, for compensation alleged to be due him on account of injuries received by him in two accidents, viz. one on or about November 25th, and the other on December 4, 1932, while in the discharge of the duties of his employment. The employer was engaged in constructing the steel and concrete bridge over Red river at city of Shreveport for the Louisiana highway commission. It is alleged that, while carrying one end of a heavy piece of lumber on November 25th, plaintiff stumbled and sprained or strained the lower part of his back, and that on December 4th, while he was being lowered by cable into a large bridge pier, some 60 feet deep, with another workman by the name of Sparks riding across his legs, he was severely injured by the unusual and sudden stopping of the cable before the bottom of the pier was reached; that the descent into the pier was so suddenly stopped that he and his companion were (quoting the petition) "thrown off or onto the bottom, where they caught on their feet, a distance of several feet, causing petitioner to receive a terrible jolt in his back and backbone and spine, aggravating and renewing the sprain or strain" of November 25th. He alleges injury to the tissues, ligaments, and bones of the sacroiliac region and to the vertebræ of the lumbar part of the spine; that the disability resulting therefrom is total and of a permanent character and forbids him doing work of any reasonable character; that his employer, its agents and servants, had immediate knowledge of said accidents following their happening. He further alleges, and it is admitted by defendants, that shortly after the last-alleged accident defendants began to pay him compensation and thereafter ceased doing so; that he then instituted suit against them in Bossier parish, where the accidents occurred, to recover compensation; and that, when the case was called for trial, defendants in open court requested that they be allowed to pay all accrued compensation and the costs of court to that time, and, plaintiff acceding thereto, a nonsuit was entered in the case; and that at that time and place defendants agreed to furnish plaintiff, and he agreed to accept, medical treatment from a physician of defendant's selection.

Defendant denies the allegations of fact and law of each and every article of plaintiff's petition. No special defenses are urged.

From a judgment rejecting his demands, plaintiff appealed.

The defense propounds two issues in the case:

(1) Did the plaintiff meet with an accident?

(2) Is he suffering with a disability to do work of any reasonable character?

If the first defense is sustained, the second needs no consideration from us. There are no written reasons for judgment in the record. In their brief, counsel of defendants state that the lower court found against plaintiff on both issues.

So far as the alleged accident of November 25th is concerned, plaintiff himself has eliminated it from the case, and his counsel virtually concedes that the case revolves around the alleged accident of December 4th.

It is not disputed that plaintiff and his colaborer were being lowered into the pier by steel cable controlled by electric power the evening of December 4th. Plaintiff was astride the cable with his weight resting on a shackle attached to its lower end, while Sparks' legs were somewhat around plaintiff's waist about the hips with part of the weight of his body resting on plaintiff's back. Both were holding the cable as they went down. The descent was rapid. As was the rule, before reaching the bottom, plaintiff signaled to the watchman at top of the pier to slow the speed of the cable, and this signal was relayed to the engineer operating a steel crane and engine which controlled the movements of the cable. Plaintiff contends that, instead of bringing the cable to a stop gradually, it was done suddenly, and that he and Sparks were both "stripped" therefrom and hurled violently to the ground, a distance of 12 or 15 feet. Sparks corroborates plaintiff as to the rapid descent of the cable and it being suddenly stopped, but is not certain that they were "stripped" from it when the sudden stop was made. He says he could touch the ground with his feet when the cable stopped. He also says that when the cable stopped that plaintiff asked him to get off as he was hurt;

thought he was ruptured about the hips; that he sat down in the corner of the pier for a while and did not do any heavy work thereafter; that as his weight largely rested on plaintiff he did not feel the effect of the jerk following stoppage of the cable as did plaintiff. Plaintiff was doubtless jarred very much when the cable stopped, but we do not think he was knocked unconscious as he testifies. Sparks says he was not. He did not allege in his petition that he was knocked unconscious.

Plaintiff testified that when he came out of the pier he informed his foreman of his experience down in the pier. He is corroborated in this respect by a fellow workman. The foreman testified that he did not learn of the accident for "a good while" after it was supposed to have happened. He was not positive that plaintiff did not tell him of it, but rather inclined to think he did not. It seems to us that, had plaintiff told this foreman that he had been hurt, that he would have been promptly referred to a doctor as was done on 9th of December. The workman at top of pier who gave the signals to the engineer testified that he heard nothing of the accident from plaintiff that day and that he was looking down in the pier when plaintiff and Sparks were let down and nothing unusual occurred. Plaintiff says that when he came out of the pier he talked strong language to this signaler because he allowed the cable to go down so fast and be stopped so suddenly. No one corroborates him on this point. The man says that plaintiff volunteered to relieve him from duty as he had been working overtime. Plaintiff worked at the bridge December 5th, 7th, and 8th, also on December 27th and 28th, making ten hours per day. On the 9th he reported to the company's bookkeeper that he had been injured while carrying a timber. He was referred to Dr. Boyce, of the city of Shreveport, for attention. Thereafter he was examined and X-rayed by several other physicians.

When giving the history of his case to Drs. Thomas, Cassity, Huckaby, and Potts, at different times, plaintiff stated that he fell from the cable to the ground on his buttock, estimating the distances at from 8 to 15 feet, but did not say he was knocked unconscious.

To Dr. Caldwell he stated that he fell 8 feet from the end of the cable, landing on his feet, and was knocked unconscious; that his injury, thought to have been a rupture, was caused by the jerk of the cable rather than the fall.

To Dr. Boyce, on December 9th, the first physician he consulted, he stated he was injured while lifting a heavy piece of timber, that he strained his back while doing the lifting. He made no mention of an injury of December 4th. This is corroborative of the bookkeeper's record of plaintiff's complaint to him.

In connection with these varying versions of the facts of the alleged accident, we advert to the allegations of the petition, sworn to by plaintiff, that he and Sparks landed on their feet after being stripped from the cable. It is passing strange that the simple facts of an accident, at a time they should have been fresh in the mind of one involved therein, could not have been uniformly related to physicians from whom relief was desired and expected.

In view of these contradictory versions by plaintiff of the alleged accident, his assertion that he was knocked unconscious when the cable was stopped, which is unquestionably untrue, the inclusion of the alleged accident of November 25th in his sworn petition, which he eliminated as a witness in his own behalf, his refusal to have his tonsils removed to alleviate his pain, and the tardy notification to defendant's bookkeeper of the supposed accident, we are constrained to not accept his testimony seriously. To this array of unfavorable facts and circumstances we add that he made it clear the accident happened on first trip by him and Sparks into the pier, and, when confronted with testimony that he made more than one descent into the pier, he shifted and said he was injured on second trip down.

Dr. Boyce, accepting plaintiff's subjective symptoms, and the history of his injury, aided by X-ray picture, which disclosed no fracture, and physical examination, diagnosed his trouble as being a moderate sacroiliac strain. He prescribed treatment for the ailment and strapped his lower back with adhesive tape. These were worn for 2½ weeks. During the time the patient regularly returned to Dr. Boyce for examination and attention. He was not improving as much as the doctor expected. His body was carefully checked for sources of pus infection. The tonsils were found to be involved, and the doctor suggested the advisability of removing them. He felt that by doing this the patient's condition, which had degenerated into a simple case of rheumatism, would improve. Plaintiff, after consulting with other physicians, declined to allow the tonsils removed. He then ceased to avail himself of Dr. Boyce's services.

The record discloses that there were about one score of workmen in the "gang" in which plaintiff worked, of which Tom Weathers was foreman. These men labored in close prox-

imity to each other; their geographical relation being such that an accident to one of them, or the happening of anything unusual among them, or to one of them, would have immediately been known to all, or practically all, of them. Yet, in this case, excepting Sparks and the man who claims to have heard plaintiff tell the foreman he had been injured, no one learned of plaintiff's experience down in the pier. He would have us believe that he was knocked unconscious for an appreciable length of time, and that not one of his fellow workmen knew of it, save Sparks, who says it did not happen; and not one of them offered to minister unto him in such condition. It seems absurd on its face.

The sympathetic tendency, well known to all, colaborers have for each other, especially in a case of this character, did not manifest itself in this instance. All of the witnesses in a position to know anything of the facts were colaborers with plaintiff. With little exception none of them came to his relief; none of them corroborated his testimony fully; most of them contradicted him. Sparks, introduced as a witness for plaintiff, reluctantly gave some favorable evidence for him. When the case was tried, none of these witnesses were in the employ of the contractor.

[2] One phase of this case distinguishes it from the general run of compensation cases, and that is the resumption of compensation payments by defendants after they had been discontinued. This followed the nonsuit in the case in the district court of Bossier parish. There is a paucity of testimony touching the events that transpired in the court before it was agreed that the case be nonsuited and payments of compensation be resumed, but there seems to be little or no difference between counsel thereon. Defendants' counsel wished to have plaintiff submit to further medical examination in order to determine if he was disabled to do his regular work, and, incidentally, we assume, to determine if he was really hurt in the accident and, if so, the nature and extent of the injury.

Plaintiff's counsel, while conceding that the payment of doctor's bills and compensation is not conclusive proof that an injury was received, say that is a very strong corroborative circumstance which should be considered in the light of other evidence in the case. They argue forcefully that, if defendants were not convinced that plaintiff suffered an injury, what good reason could be given by them for making the payments for seven months without there being any legal obligation on their part to do so? The response of counsel to this argument is plausible. It is found in their brief, from which we quote:

"Defendants further contend that an action was formerly instituted by the plaintiff in the Twenty-sixth Judicial District Court of Bossier Parish; that at that time the plaintiff insisted that he would accept medical treatment by Dr. Caldwell or Dr. Potts whom he personally had consulted; and that in a further effort to ascertain if the plaintiff had any injuries, defendants referred him to Dr. Caldwell at his request for further treatment; and that the action in the Twenty-sixth District Court was dismissed.

"Defendants further contend that after spending a considerable sum for compensation and the statutory limit for medical expenses in an effort to avoid any possible injustice, they have concluded that the plaintiff suffered no accident and incurred no injury or disability and, therefore, they deny all liability."

We have studied this record very closely. Exceptional features are presented in the case. We wished to make no error in resolving the issues of fact therein presented. We have been influenced measurably by the judgment of the lower court who, as all know, was in a much better position than we to weigh and pass upon the facts. To us, at least, there appears no manifest error in the judgment appealed from. Whatever ailment plaintiff now suffers from, or suffered from when he was referred to Dr. Boyce, we do not think arose from, or is traceable to, any accident claimed by him.

The judgment appealed from is affirmed.

DREW, J., recused.